UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GARY WEBSTER, a/k/a "Jamal"<br><br>Defendant | CRIMINAL No. 18-cr-10299-ADB-1 |

### GOVERNMENT'S TRIAL BRIEF

The United States, by its undersigned attorneys, respectfully submits this trial brief to identify relevant issues regarding the trial, which is scheduled to begin on October 21, 2019.

**I.     SUMMARY OF GOVERNMENT'S CASE**

On August 29, 2018, a grand jury in this district returned an indictment charging Gary Webster, a/k/a "Jamal", with one count of conspiracy to distribute and possess with intent to distribute cocaine and fentanyl from an unknown period until in or about September 2017.  The Indictment also specifies that the conspiracy involved 40 grams of N-phenyl-N-[l-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, and that the same amount was attributable to, and was reasonably foreseeable by the defendant.

The investigation utilized a cooperating witness to make consensual recordings and controlled purchases of cocaine and fentanyl from the defendant, and an unindicted coconspirator J.A.[1]  Prior to the controlled buys in this case, agents first searched the CW and its car for money or contraband, provided the CW with a recording device and monitor, and provided the CW with a set amount of Official Government Currency ("OGC") to make the purchase.

---

[1] J.A. was separately Indicted, though not specifically named in the same Indictment as this defendant, and not charged with conspiracy.

**September 8, 2016, Controlled Buy 1**
**Recorded Purchase of 62 grams of Cocaine from the Defendant**

On September 8, 2016, CW-1 advised agents that she/he had received a phone call from WEBSTER (617-291-8524, who she/he knew as "Jamal," on September 4, 2016, and agreed to purchase sixty-two grams of cocaine for $3,000. CW-1 received a phone call from WEBSTER on September 8, 2016, requesting that that CW-1 meet him at 64-66 Codman Hill Avenue, Dorchester, MA. At approximately 6:12 p.m., CW-1 placed a consensually recorded phone call to WEBSTER, who agreed to meet her/him at Cadman Hill Avenue in twenty minutes. Agents gave CW-1 $3,000 in OGC, employed the procedures discussed above, and Officer Brito escorted CW-1 to the area of Cadman Hill Avenue where other agents had set up surveillance.

CW-1 proceeded to 64-66 Codman Hill Avenue on foot, under constant surveillance of agents. Surveillance agents also identified a black male, believed to be WEBSTER, exit the address and enter the driver's seat of a black Jeep, bearing MA Registration 1PYC40, and registered to CHERELLE WEBSTER (the "Jeep").

CW-1 entered the front passenger seat of the Jeep, which then drove off. During the drive, WEBSTER retrieved the cocaine from his pocket and handed it to CW-1 in exchange for $3000. After the transaction, WEBSTER dropped CW-1 off on Wilmington Street, and she/he walked to a predetermined meeting location where she/he turned the cocaine over to FBI. Surveillance agents observed WEBSTER return the Jeep to 64-66 Codman Hill Avenue and run inside the building.

After the transaction, CW-1 identified a photograph of WEBSTER as the individual who sold her/him the sixty-two (62) grams of cocaine. This photograph was picked out of an eight / person photo array prepared and presented by SA Kenny and observed by Det. Brown.  The DEA laboratory certified that the substance contained cocaine and weighed 62.2 grams.

### September 22, 2016, Controlled Buy 2
### Recorded Purchase of 62 grams of Cocaine from the Defendant and J.A.

On September 22, 2016, CW-1 advised agents that she/he had received a phone call from WEBSTER (617-291-8524) on either September 10 or September 11, 2016, asking about cocaine previously sold to CW-1 on September 8, 2016 ("Controlled Buy 1"). On September 19, 2016, CW-1 made a phone call to WEBSTER and agreed to purchase sixty-two (62) grams of cocaine from WEBSTER for $3,000, the same terms as Controlled Buy 1, on Wednesday, September 8, 2016. In a series of text messages between WEBSTER and CW-1 on September 20 and September 21, 2016, WEBSTER told CW-1 that the transaction would occur on the night of September 22, 2016.

On September 22, 2016, CW-1 sent a text message to WEBSTER asking when and where the two could "get together." WEBSTER responded via text message, informing CW-1 that the transaction would occur at 66 Codman Hill Avenue, the location of Controlled Buy 1, at 9:00 p.m. Agents gave CW-1 $3,000 in OGC, employed the procedures discussed above, and followed CW-1 to the area of 66 Codman Hill Avenue where other agents had set up surveillance.

Once CW-1 arrived at 66 Codman Hill Avenue, a Mercedes-Benz sedan, bearing MA registration GJWl, and registered to WEBSTER's father (also named GARY WEBSTER) (the "Mercedes") pulled into the location's driveway. WEBSTER got out of the Mercedes and led CW-1 to the basement of the house. Upon entering the basement, CW-1 handed WEBSTER $3,000. Agents overheard CW-1 speaking with WEBSTER and another male, later confirmed by CW-1 to be J.A. J.A. then carried a brown plastic "supermarket" bag into a back room, accompanied by WEBSTER. Thirty seconds later, WEBSTER and J.A. returned to the basement, and J.A. handed WEBSTER bags of cocaine and marijuana. WEBSTER then passed the bag of cocaine to CW-1.

After the transaction, CW-1 exited the house and proceeded to the predetermined meeting location under surveillance by agents where she/he turned the cocaine over to FBI. The DEA laboratory certified that the substance contained cocaine and weighed 60.7 grams.

### September 29, 2016, Controlled Buy 3
### Purchase of 62 grams of Cocaine from the Defendant

On September 29, 2016, CW-1 exchanged text messages with WEBSTER (617-291-8524) agreeing to meet at 8:15 p.m. CW-1 understood this to mean that she/he would meet WEBSTER at 8: 15 p.m. at 66 Codman Hill A venue to transact a purchase of sixty-two (62) grams of cocaine. Agents gave CW-1 $3,000 in OGC, employed the procedures discussed above, and followed CW-1 to the area of 66 Codman Hill Avenue where other agents had set up surveillance.

At approximately 8:16 p.m., agents observed a car, registered to P.V. Holding Corporation, and believed to be an Uber cab, pull up to 66 Codman Hill Avenue and WEBSTER get out and meet with CW-1. WEBSTER and CW-1 walked to the back porch of 66 Codman Hill Avenue, during which time WEBSTER provided the drugs in exchange for $3,000.  WEBSTER and CW-1 discussed prices for a potential heroin transaction, with WEBSTER referencing confirming the prices with another individual, believed to be J.A. After the transaction, agents observed CW-1 depart 66 Codman Hill Avenue and walk to the predetermined meeting location where she/he turned the cocaine over to FBI.

The DEA laboratory certified that the substance contained cocaine and weighed 62.0 grams.

### October 6, 2016, Controlled Buy 4
### Purchase of 125 grams of Cocaine from the Defendant

On October 6, 2016, CW-1 advised agents that she/he had communicated with WEBSTER (617-291-8524) via text message the previous night and agreed to purchase twice the amount of cocaine purchased on each of CW-1 's previous three controlled buys (approximately 125 grams for $6,000). WEBSTER instructed CW-1 via text message to meet him at approximately 8:00 p.m. on the night of October 6, 2016. Based on prior transactions and conversations with WEBSTER, CW-1 understood this to mean to meet WEBSTER at 66 Codman Hill Avenue. Agents gave CW-1 $6000 in OGC, employed the procedures discussed above, and followed CW-1 to the area of 66 Codman Hill Avenue where other agents had set up surveillance.

CW-1 arrived at 66 Codman Hill Avenue at approximately 8:10 p.m., made a phone call to WEBSTER informing him she/he was there, and was let into the basement. Agents positively identified the voice and image of WEBSTER in the basement based on their review of prior recorded interactions

with WEBSTER. CW-1 sat at a table in the basement and WEBSTER gave her/him a brown plastic "shopping" bag containing the cocaine in exchange for the $6,000. CW-1 and WEBSTER discussed potential future transactions concerning heroin, and CW-1 understood WEBSTER to say that she/he could purchase heroin when J.A. returned to town.

After the transaction, agents observed CW-1 exit the basement of 66 Codman Hill Avenue at approximately 8:33 p.m. and drive to the predetermined meeting location where she/he turned the cocaine over to FBI. The DEA laboratory certified that the substance contained cocaine and weighed 123.6 grams.

### October 18, 2016, Controlled Buy 5
### Purchase of 49 grams of fentanyl from the Defendant and J.A.

On October 18, 2016, CW-1 advised agents that between October 12 and October 17, 2016, she/he had exchanged text messages with WEBSTER (617-888-9971) arranging the purchase of fifty (50) grams of heroin for $4,000. Additionally, CW-1 met with WEBSTER in person on October 17, 2016, and WEBSTER told CW-1 that he would sell him/her the fifty (50) grams of heroin the following night, October 18, 2016, after 9:00 p.m. On October 18, 2016, at approximately 3:00 p.m., CW-1 received a phone call from WEBSTER moving the transaction back to 10:30 p.m. that night. Agents gave CW-1 $4,000 in OGC, employed the procedures discussed above, and followed CW-1 to the area of 66 Codman Hill Avenue where other agents had set up surveillance.

CW-1 arrived at 66 Codman Hill Avenue at approximately 10:43 p.m. and walked to the front porch. WEBSTER led CW-1 to the basement of the house where they met J.A. CW-1 attempted to give the $4,000 to J.A., who told her/him to give it to WEBSTER. WEBSTER then removed a bag of fentanyl from a black backpack and handed it to CW-1. After the transaction, agents observed CW-1 exit 66 Codman Hill Avenue at approximately 10:59 p.m., drive to the predetermined meeting location, and turn the heroin over to FBI. The DEA laboratory certified that the substance contained fentanyl and weighed 49.1 grams.

**II.     PROPOSED STIPULATIONS OF FACT**

If the parties agree to any stipulations, they will alert the Court, by the stated deadline of October 14, 2019.

## III.     ANTICIPATED EVIDENTIARY ISSUES

### A.     Consensual Recordings and Text Messages

The government intends to introduce consensually-monitored recordings of telephone calls, text messages to and from the defendant, and audio/video recordings of the meeting between CW-1 and the defendant and J.A., described above.

Federal Rule of Evidence 901(b)(5) permits sound recordings to be introduced through a witness who has heard either firsthand or though mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.  The government will introduce evidence that each recording is an accurate reproduction of the events involved, either from a participant in the conversation or from a witness able to testify that the equipment used to both record and play the recording are in good working condition and that the recording was stored securely to prevent tampering. The government will also offer testimony identifying the voices on each recording. Any person may identify the voices on a recording if that person has heard the voices at any time. Participants in the conversation and agents involved in the recording are competent to identify voices in a recording.

The recorded conversations were wholly in English. The government is in the process of preparing transcriptions to assist the jury while the recordings are being played. The government will provide drafts of all transcripts prepared to the defense as they are completed. The government expects to provide its final versions of the excerpted transcripts to defense counsel prior to the beginning of trial. Absent stipulations on this issue, the government will offer testimony at trial that the transcripts are true and accurate. The text messages concerning the controlled purchases were previously provided to defense counsel.  The government intends to offer such statements as admissions of the defendant under Federal Rule of Evidence 801(d)(2)(A), and statements made in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E).

### B. Statement of Prior Identification

The government intends to introduce the prior statement of identification made by CW-1, including the statements and photo array from which the statement was drawn. Pursuant to Fed.R.Evid. 801(d)(1)(C), these statements are not hearsay.

### C. Expert Testimony

The government intends to introduce expert testimony from DEA Senior Forensic Chemists Yuriy Uvadov and Betty Bleivik, and Forensic Chemist Maolin Li, regarding the analysis performed on the five FBI exhibits, their conclusions that the substances are cocaine or fentanyl, and that the net weight of each item is as stated their reports.  The experts will base those conclusions on the testing procedures set forth in reports, laboratory documents and supporting materials previously disclosed to defense counsel previously in discovery.

The government also intends to introduce expert testimony from Massachusetts State Police Lt. Erik Telford concerning controlled substances, their packaging, weight, practices and methods of common to drug conspiracies, and the explanation of certain terms and vernacular used by members of drug conspiracies.  The basis of this testimony and the expertise of Lt. Telford have been disclosed to defense counsel.

## VI. LENGTH OF TRIAL

The government anticipates calling as witnesses TFO Patrick O'Brien, CW-1, and an additional agent or agents who performed surveillance and/or were in the chain of custody for the controlled substances. In addition, depending on whether the government and defendant enter stipulations of fact, the government may call the chemists. Among other things, the government anticipates offering as exhibits the audio/video recording of the controlled buys, still photographs from those recordings, text messages between the defendant and CW-1, and the audio recordings of consensually monitored calls. In total, the government expects its case-in-chief to last no more than four days.

## VII.  SPECIAL ARRANGEMENTS

The government is not making any requests for special arrangements for trial at this time. As described above, the government expects to offer the testimony of DEA Senior Forensic Chemists Yuriy Uvadov and Betty Bleivik, and Forensic Chemist Maolin LI, who work in New York. Depending on the actual progress of the trial and travel schedules and family obligations, the government may request that the chemists be allowed to testify out of order. The government will consult with court personnel to ensure that the format of its discs will be compatible with the courtroom's facilities. The government also anticipates that it may refer to certain charts or photographs (which will require the use of an easel) during its opening statement. The government will address those issues with defense counsel and the Court prior to trial.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney

Date: September 30, 2019