**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

v.                                                            DOCKET NO: 1:18-cr-10299-ADB

GARY WEBSTER

## SENTENCING MEMORANDUM OF GARY WEBSTER

### Introduction

This Memorandum, with accompanying letters of support and other documents, is submitted to assist this Honorable Court as it determines the most appropriate sentence for the crime for which Gary Webster has pleaded guilty. As will be demonstrated, the undersigned suggests that a sentence of home confinement followed by supervised release will best meet the interests of justice in this matter. Webster, age 37, has been convicted of conspiracy to possess with the intent to distribute cocaine and fentanyl (in an amount greater than 40 grams); and several substantive counts of selling the same. Mr. Webster submits the enclosed memorandum, letters of support from family members and friends (sent to the Court separately) and relies in part on the personal and biographical section of the Probation Department's Pre-Sentence Investigation Report.

The undersigned states that Gary is worthy of the opportunity to demonstrate to this Honorable Court, that he can be rehabilitated, and through his extensive support system of friends and family, and most importantly to himself, that he can positively impact his family, community, make a career for himself, and be a law abiding member of society.

### Brief Synopsis

Gary grew up in a middle-working class family with loving parents; and one older sister Cherelle (age 40) and a younger sister Chavon (age 31). He grew up in a stable family in which education and family values were very important. Gary attended Boston public schools as did

his sisters; he went on to enroll and then graduate from the Boston Latin School. When Gary was in his teens; his mother and father divorced. His mother struggled with alcoholism. Notwithstanding these difficult developments, his family remained close-knit. Gary graduated Boston Latin and enrolled in the University of Massachusetts at Amherst. He graduated in 2006 with a degree in political science. Gary's mother Elein was diagnosed with cancer when he was in college. She passed away in 2007 when Gary was 23 years old.

After he graduated from UMASS, Gary embarked on what would turn out to be a promising career in government. He worked at the Massachusetts Department of Transportation for 4 years as a project manager; He worked for the City of Boston Zoning Board of Appeals for two years and then as a legislative aide for a Boston City Councilor. His last government position was with the Boston Planning and Development Department (formerly known as the Boston Redevelopment Authority) for over a year when he was terminated as a result if his arrest for the present charges.

Gary's family has always been involved in local politics when he was growing up and he has worked on many campaigns over the years. His interest in government led him to attend and graduate with a Master's degree in urban affairs from Boston University. He enrolled in the masters program prior to his arrest in this case and he continued his studies graduating in 2019 with high grades. Upon resolution of his pending criminal case and depending on the penalty he receives from the Court, Gary has ambitions to return to some type of public service work.

Gary met his wife Andrea Keel Webster in 2003 while they were students at UMASS. They have been together since and were married in 2018. They are the parents of 2 daughters; 10-year-old Arrianna and 10-month-old Brianna. The family has lived in the North Station area on Canal Street for 10 years. Andrea is a hair stylist and speaks to Gary's many good qualities as a father and husband. Gary has worked at his father's family catering-restaurant business in Dorchester since his arrest in this case. He is an important source of income and financial support to his family.

Gary has had a significant period of time to reflect on his criminal behavior and the wrongfulness of his conduct. He understands full well the damage narcotics has had on society and recognizes that his participation in this offense was wrong, is a bad thing and that he should be punished.

## **Theories of Sentencing**

The matter of imposing an appropriate disposition upon a defendant is a subject which has bediviled defendants, jurists and scholars alike since the time of Plato. A truly effective disposition must take into consideration not only the interests of the defendant and his victim, but the greater interest of the society in which the criminal offense was committed. "Generally speaking there have been advanced four theories on the basis upon which society should act in imposing penalties upon those who violate its laws. These are:

1. To bring about the reformation of the evildoer;
2. To effect retribution or revenge upon him;
3. To restrain him physically so as to make it impossible for him to commit further crimes; and
4. To deter others from similarly violating the law." Commonwealth v. Ritter, Court of Oyer Terminer, Philadelphia, 1939, 13D & C 285, reprinted by Kadish and Paulsen, Criminal Law and its Processes, 3rd Edition 1975.

In an excellent discussion on the various theories of sentencing, Judge Stern in Ritter traces the philosophy of sentencing from its earliest time. Citing the work of Plato, he states, "no one punishes those who have been guilty of injustice solely because they have committed injustices, unless indeed he punished in a brutal and unreasonable manner. When anyone makes use of his reason in inflicting punishment, he punishes, not on account of the fault that has passed, when no one can bring it about that what has been done may not have been done, but on account of the fault to come, in order that the person punished may not again commit the fault and that his punishment may restrain from similar acts those who witnessed the punishment." Judge Stern goes on to take note of the words of Hobbes who wrote "we are forbidden to inflict punishment with any other design than for correction of the offender, or direction of others."

Judge Stern further observed that it is the third theory of sentencing, "mainly that the restraint of the wrongdoer in order to make impossible for him to commit further crimes," that forms the first legitimate basis for sentencing. He further observed that, "if, therefore, there is a danger that the defendant may again commit crime, society should restrain his liberty until danger be passed…". Also, it is relevant, when necessary, that the court take into consideration the history

of the defendant as well as the circumstances surrounding the crime with which he has been convicted.

The final objective of sentencing is that of deterrence. It may be stated that this theory holds that the punishment imposed upon a particular defendant is not to be regarded as an end in of itself but rather the means to an end; namely, deterring others from committing crime. As the theory goes, if a multiple number of prospective offenders may be dissuaded from their criminal acts by their becoming aware of the sentence imposed on a specific defendant, then society's interest in both the punishment and prevention of crime has been satisfied. Every sentencing Court has a different set of determining factors to consider; each case is unique; just as every defendant is unique. This Honorable Court's responsibility is to attempt to gain an understanding of the crimes committed and of the person charged with the commission of those crimes and then fashion a sentence that advances the cause of justice.

## Sentencing Guidelines

The United States Sentencing Guidelines were adopted in 1984 and has remained a helpful advisory tool for assessing appropriate punishment for offenders. The document is a comprehensive and balanced set of guidelines that provide greater uniformity and certainty in sentencing so that victims and offenders alike understand the meaning and effect of the sentence imposed. The guidelines although advisory, promote fairness and reduce disparity while preserving that degree of judicial discretion necessary to fashion the sentence appropriate for the individual offender and the specific offense.

The facts and sentencing factors in this case include a total drug quantity of fentanyl of 49.1 grams and cocaine totaling just over 300 grams. The guidelines calculation level of 24 for these quantities referenced in the Pre-Sentence Report is accurate.

The Pre-Sentence Report also calculates the three level adjustment for acceptance of responsibility. The defendant conducted a safety valve proffer after the issuance of the initial disclosure of the Pre-Sentence Report and the Court should adjust the final base offense level an additional 2 levels downward.

    The undersigned argues that the Court should adjust Webster's base offense level further by calculating an adjustment pursuant to section 3B1.2 for a minor role. Throughout the offense conduct the defendant served as a go-between middleman between the cooperating witness and Jonathon Andrade, the source of the drugs. The three parties are all family members and have

known each other for many years.  The buyer knew that Andrade was the source of the drugs.  The undersigned argues that some adjustment for minor role is appropriate and if the Court adjusted his base offense level two levels; the final base offense level should be 17.

The defendant's criminal history score as set forth in the Pre-sentence Report is accurate.  The defendant has a minor or no record and he should be considered as criminal history category 1 as referenced by the Pre-Sentence Report.

The Court should also consider the factors referenced in 18 U.S.C. 3553(a) in determining the appropriate sentence.  These factors (favorable and unfavorable) include the following information

**Aggravating factors include**:

There are no aggravating factors that appear to specifically apply to Gary Webster.

**Mitigating factors include:**

The defendant has little or no criminal record; it consisting of motor-vehicle and misdemeanor marijuana offenses; for which most were dismissed.

Gary's role in this offense, when viewed in the context of his relation to Jonathon Andrade and the cooperating witness and the facts, support a finding that he should qualify for a minor role adjustment pursuant to section 3B1.2 of the U.S.S.G.  Some of the relevant facts are: Gary was approached at a funeral for his aunt by the cooperating witness in August of 2016.  The defendant and cooperating witness are related and Gary has known him his entire life.  The cooperating witness asked Gary if he (Gary) could speak with Jonathon Andrade about selling him drugs.  The cooperating witness knew from the inception of the investigation that Andrade was the source of the drugs as he knew Andrade for many years because they were also related.  For the ensuing cocaine transactions Gary acted as a middleman between the supplier and buyer.  For the final purchase (fentanyl) Gary was present and took possession of the buy money in the basement of the Webster family home in Dorchester where Andrade, the cooperating witness and Gary were present.  Webster was paid a stipend of $500 for each of the drug purchases, and did not otherwise share in the profits of the drug sales.  For each of the cocaine transactions Andrade delivered the cocaine to Gary, after Gary learned the requested drug amount from the buyer.  Andrade brought the fentanyl to the final transaction in the basement of the Webster home in Dorchester.

Gary has engaged in productive efforts to recognize the wrongfulness of his conduct.  He has reflected on the harm narcotics have on people and society.  He has witnessed first-hand the effect

substance abuse has had on his family.  He has given great thought to how drugs and drug selling has affected others;

Pre-Sentence rehabilitation and aberrant behavior are each a recognized basis for a sentencing court to consider a lesser sentence.  Two and half years have passed since Gary was involved in the five drug sales over the course of 6 weeks in September and October 2016.  He had never sold cocaine or heroin-fentanyl before he engaged in these sales.  He has not been involved in any drug sales since that time.  This case is unique in some respects as Webster and the two other participants to the transactions are all family members who had known each other for many years.  Gary's involvement appears to have been aberrant as he had been on track to a productive career in government, urban planning and other civil service careers at the Boston Redevelopment Authority.  He was engaged in a Masters program at Boston University, which he subsequently completed with outstanding grades during the pendency of this case.  Before and after the offense conduct in this case, Gary appears to have been a good father and husband.  The many letters of support submitted on his behalf speak to a young man of good moral character who has a good reputation, is hard-working and is a nice person.  Had someone other than the cooperating witness asked Gary to be involved in the offense conduct; it is fair to say that Gary may not have engaged in such drug distribution activity.

Gary understands his criminal behavior was wrong; and he has vowed to himself that he will make right his bad choices, and wrong decisions.

Gary's family of two daughters and his wife depend on his economic support and they will suffer financial harm and likely be unable to afford their rent at the family home if he is penalized with a lengthy prison sentence.

There is no evidence that Gary engaged in any violent actions in the charged conduct in this case or that he has a history of the same;

There is no allegation that Gary possessed a firearm or dangerous weapon in this case;

There is no allegation that Gary used threats of violence or intimidated any witness in this case nor does he have a history of the same.

Gary is unlikely to re-offend at the conclusion of whatever sentence he will receive;
Gary poses no threat of engaging in further criminal activity.  He appears as no danger to the community should a sentence of home detention be imposed;
And,

In balancing the aggravating and mitigating factors, the undersigned suggests that a deviation or departure from the guidelines is appropriate.

## Analysis and Discussion

To determine whether or not the reformation theory of sentencing applies to the case at bar, the defendant submits that this court must carefully scrutinize his personal history and determine whether he is a person who is capable of being reformed.  Furthermore, the court must determine the appropriate method of reform to be imposed in this case.  The defendant submits that by virtue of his age and his unique personal history he is a person who is capable of reform without the need for incarceration in the Bureau of Prisons.  He has the support system of family and friends to successfully live a life in service to others.

Despite his involvement in the criminal conduct of this case, Gary has some unique skills and attributes that have contributed to some significant personal and professional accomplishments. His efforts at obtaining his Master's degree reveals a man who is hardworking and determined to help others.  His family history shows that he has been a good husband, father, son and brother.

The undersigned has submitted letters of support from family and friends.  The letters should show and corroborate that he has been a good person, loyal family member and devoted son.  In addition, they portray a man who has a kind and giving heart.  They show a man who has been a great friend and help to many people whose lives he has touched in a positive way.

With an informed grasp of mistakes he has made, Gary will be able to conform his future conduct to the norms of society.

In summary, Gary has the personal attributes, and the essential support system provided by his family and friends and others to live a successful and happy life. The defendant urges this Honorable Court to find that he is a person who may be reformed by a sentence other than prison.

The defendant further urges this court to turn away from the discredited theory of retribution in determining the appropriate disposition to impose upon him.  No legitimate purpose would be served by imposing a term of incarceration which serves merely to exact revenge upon him.  The defendant, therefore, respectfully urges this court to disregard retribution in determining the appropriate disposition to be imposed.

Turning to the restraint theory of sentencing, the defendant submits that there is virtually no danger that he will again commit crime during the course of his lifetime.  The defendant has suffered a painful lesson already during the course of this case.  He therefore urges this Honorable Court to find that a sentence other than prison is appropriate and will restrain him from committing further crimes.

The undersigned states that such a sentence will appropriately punish and sanction Gary and satisfy all elements of fairness and reducing disparity.

## Conclusion

Gary Webster now submits himself to this Honorable Court for disposition.  He has the intelligence, abilities and network of support needed to again continue being a positive member of society.  He humbly asks this Honorable Court for the chance to demonstrate his worth to his community.

Date: March 5, 2020

Respectfully submitted,
**Gary Webster,**
by his lawyer,
/s/William Keefe
William Keefe
BBO # 556817
801C Tremont Street
Boston, MA 02118
Telephone: (617) 442-9201
Facsimile: (617) 445-8002

## CERTIFICATE OF SERVICE

I, William Keefe, hereby certify a copy of the attached Defendant's Sentencing Memorandum was electronically filed with the United States Attorney, United States Attorney's Office, 1 Courthouse Way, Boston, Ma 02210, today, March 5, 2020.

/s/William Keefe
William Keefe