UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

GARY JAMAL WEBSTER,

Defendant

Criminal No. 18-CR-10299-ADB

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant in this case was responsible for the distribution of a substantial quantity of cocaine and fentanyl. A guidelines sentence is therefore necessary both to punish this defendant and to dissuade others from continuing to distribute these drugs.

The defendant in this case sold approximately 49.1 grams of fentanyl and 308.5 grams of cocaine to a cooperating witness ("CW-1") during a series of controlled buys in September and October of 2016. See PSR[1] ¶¶ 8-23. The government recommends that the Court sentence the defendant to 30 months of imprisonment and four years of supervised release.

**I.    ADVISORY SENTENCING GUIDELINES**

On November 7, 2019, the defendant pled guilty to a six-count Superseding Indictment alleging one count of conspiracy to distribute and possession with intent to distribute cocaine and 40 grams or more of fentanyl , in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(vi); four counts of distribution of and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); and one count of distribution of and possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B). See PSR ¶ 2.

---

[1] References to the presentence investigation report are by paragraph (PSR ¶ _).

The final presentence investigation report ("PSR") determined that the defendant's Base Offense Level was 24 pursuant to USSG §2D1.1.  See PSR ¶ 30.

The defendant is entitled to a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a).  The government also agrees that the defendant has timely notifying authorities of his intention to enter a plea of guilty, entitling him to the one-level reduction under USSG § 3E1.1(b).  See PSR ¶¶ 37, 38.  Thus, the resulting total offense in the PSR is 21.  See PSR ¶ 39.

The PSR also determined the defendant's criminal history is category I based on one criminal history point.  See PSR ¶¶ 43-46.  Specifically, a 2011 continuation without a finding ("CWOF") for the charges of operating an unregistered motor vehicle and possessing a forged RMV document was the one counted conviction.  See PSR ¶ 44.

The corresponding guideline sentencing range under the PSR is 37-46 months, which would not exceed the statutory minimum term of 60 months.  See 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B); PSR ¶¶ 81-82.  However, the government agrees that the defendant successfully completed the Safety Valve proffer, pursuant to 18 U.S.C. § 3553(f)(5), and is therefore eligible for a reduced Total Offense Level of 19.  PSR ¶ 83.  The corresponding guideline sentencing range with the Safety Valve is 30-37 months. PSR ¶ 83.

**II.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  Consideration of the § 3553(a) factors demonstrates that a sentence of 30 months (the low-end of the guidelines sentence range) is sufficient, but not greater than necessary, to meet the goals of sentencing.

A.     **Nature of the Offense**

The facts of the instant case were extremely straight-forward: the defendant sold significant amounts of cocaine, and later fentanyl, to CW-1 on multiple occasions. See PSR ¶ 2, 29.  Typically, Webster and CW-1 would communicate via consensually-recorded phone calls or text messages, and then meet for the exchange in the area of Codman Hill Avenue, Dorchester, MA. See PSR ¶ 8-23.  These meetings included;

- September 8, 2016 - Webster sold CW-1 62.2 grams of cocaine in exchange for $3,000 of Official Government Currency ("OGC"), which had been provided to the CW by investigators. See PSR ¶ 9-12.

- September 22, 2016 - Webster sold CW-1 60.7 grams of cocaine in exchange for $3,000 of OGC. See PSR ¶ 13-16.

- September 29, 2016 – Webster sold CW-1 62.0 grams of cocaine in exchange for $3,000 of OGC.  On this date, they also discussed prices for a potential heroin transaction. See PSR ¶ 17-18.

- October 6, 2016 - Webster sold CW-1 123.6 grams of cocaine in exchange for $6,000 of OGC. See PSR ¶ 19-21.

- October 18, 2016 - Webster sold the CW 49.1 grams of fentanyl in exchange for $4,000 of OGC. On this date, an associated defendant, Jonathan Andrade[2] was also present. See PSR ¶ 22-23.

In analyzing the "nature and circumstances of the offense" in this case, the Court should consider that although the majority of the distribution conducted by Webster is of cocaine this was not solely cocaine, nor were the amounts sold insignificant. In fact, in a matter of two months, Webster sold over 300 grams of cocaine to CW-1, and escalated his behavior to the

---

[2] On January 29, 2018 Jonathan Andrade pled guilty to a four-count Superseding Information, including charges of Possession with Intent to Distribute 400 grams or more of Fentanyl, 500 grams or more of Cocaine, being a Felon in Possession of a Firearm, and Unlawful Monetary Transactions, amongst others. On August 15, 2018 Andrade was sentenced to 240 months in custody and 5 years of supervised release. See Docket 17-CR-10304, PSR ¶ 6.

distribution of fentanyl, a deadly drug that has created havoc in the United States, and more specifically in Massachusetts, over the past several years.  Moreover, the defendant worked in close connection with another individual, Jonathan Andrade, in order to further the distribution of these dangerous narcotics. He did all of this while employed as the Director of Constituent Services for the Boston City Council, which will be discussed in greater detail below.

The impact of Webster's crimes on drug users can't be overlooked.  Although the customer in the charged offenses was a cooperating witness who did not ingest the drugs, it is doubtless that the defendant's conduct was intended to feed many others' addictions.

Fentanyl is an extremely potent synthetic opioid that has become increasingly intertwined with heroin, both literally as an additive to make heroin more potent and in terms of the marketplace.[3]  More and more, drug traffickers in the Northeast are combining heroin and fentanyl due to fentanyl's greater potency and its lower cost.[4]  Nationwide, heroin-involved overdose deaths more than quadrupled between 2010 and 2015, with data indicating that heroin was involved in 12,989 American deaths in 2015.  That death rate has continued to rise, with reports of more than 47,000 Americans having died of an opioid overdose in 2017.[5]  To place

---

[3] U.S. Department of Justice Drug Enforcement Administration, *2018 National Drug Threat Assessment*, *available at* https://www.dea.gov/sites/default/files/2018-11/DIR-032-18%202018%20NDTA%20final%20low%20resolution.pdf, at pp. 28-31 (last visited April 5, 2019) (hereinafter "DEA 2018 Assessment").

[4] *Id* at 28.  Numerous sources including the DEA 2018 Assessment point to the high frequency of fentanyl in toxicology screens of apparent heroin overdoses.

[5] National Institute on Drug Abuse, *Opioid Overdose Crisis* (Revised January 2019)*, available at* https://www.drugabuse.gov/drugs-abuse/opioids/opioid-overdose-crisis (last visited on April 5, 2019).

this figure more starkly, "Every day, more than 130 people die after overdosing on opioids."[6]

Synthetic opioids (such as fentanyl) were involved in 59.8% of all opioid-involved overdose deaths.[7]

Massachusetts has been one of the states hardest hit by the opioid crisis, and has been among the top ten states with the highest rates of opioid-related overdose deaths.[8]  In 2017, Massachusetts had an opioid-related overdose death rate of 28.2 deaths per 100,000 persons, which is nearly twice the national rate of 14.6 deaths per 100,000 persons.[9]  While the increased availability of naloxone (also known as Narcan) has had a positive impact in lowering the number of overdose deaths in Massachusetts in 2017, there were still 1,938 confirmed opioid-related overdose deaths in Massachusetts and the Department of Public Health estimates that there will be an additional 115 to 130 deaths confirmed for the year once all analysis is

---

[6] *Id.*

[7] Lawrence Schol, Puja Seth, Mbabazi Kariisa, Nana Wilson, Grant Baldwin, *Drug and Opioid-Involved Overdose Deaths – United States, 2013-2017,* Morbidity and Mortality Weekly Report (January 4, 2019), Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/mmwr/volumes/67/wr/mm675152e1.htm?s_cid=mm675152e1_w (last visited on April 5, 2019).

[8] DEA 2018 Assessment at 29.

[9] National Institute on Drug Abuse, *Opioid-Related Overdose Deaths* (Revised March 2019), *available at* https://www.drugabuse.gov/drugs-abuse/opioids/opioid-summaries-by-state/massachusetts-opioid-summary (last visited on April 5, 2019).

complete.[10]  Based upon the 2018 data[11] available, of the 962 individuals whose deaths were determined to be opioid–related and a toxicology screen was performed, 863 (90%) had a positive result for fentanyl.[12]  These statistics are not hypothetical; they describe the opioid overdose crisis occurring right now in this District.  The epidemic is real and being felt every day by families across Massachusetts and New England.

    **B.**    **Characteristics of the Defendant**

The defendant is 37 years old. See PSR ¶52.  He is a lifelong Massachusetts resident and has lived in the Dorchester area for most of his life.  See PSR ¶¶ 57.  The defendant, to his credit, has impressive educational credentials and years successful employment. See PSR ¶¶ 71 -75.  It is exactly these factors which make this case so troubling. Webster was distributing significant amounts of cocaine and fentanyl during the same time period that he was employed as Director of Constituent Services for the Boston City Council President.

His criminal conduct was not a single isolated incident, but instead a concentrated effort to essentially undermine the same community he was tasked with helping through his government employment.  On the one hand, he was selling dangerous drugs in the street for financial gain, while furthering a career in politics with the other.

---

[10] Massachusetts Department of Public Health, *Data Brief: Opioid-Related Overdose Deaths Among Massachusetts Residents* (November 2018), *available at* https://www.mass.gov/files/documents/2018/11/16/Opioid-related-Overdose-Deaths-among-MA-Residents-November-2018.pdf (last visited April 5, 2019).

[11] For the first nine months of 2018, there have been 1,233 confirmed opioid-related overdose deaths and DPH estimates that there will be an additional 252 to 318 deaths.  *Id.*

[12] *Id.*

    **C.**    **Specific and General Deterrence**

In considering the appropriate sentence, the Court should consider deterring both the defendant and others.  See 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct").  A sentence in line with the low-end of the guidelines sentence range sends a strong deterrent message to others who distribute illegal narcotics.  See 18 U.S.C. § 3553 (a)(1)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct).  The circumstances of the defendant's conduct here and imposition of such a sentence by the Court would serve both goals of deterrence. Individuals tempted to engage in drug distribution must understand that *any* involvement with narcotics, notably cocaine and fentanyl, will have immediate and harsh consequences.

The defendant in this case is a prominent member of the community, who nonetheless engaged in dangerous and harmful criminal conduct.  This 30 month sentence, if imposed by the Court, would be the defendant's first prison sentence.  Given the defendant's education, work history and supportive family, the government anticipates that the 30 month sentence would be sufficient to deter the defendant from returning to drug distribution.

**III.**    **CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence the defendant to a term of imprisonment of 30 months, followed by four years of supervised release.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney

March 15, 2020